SENTENCIA
Hoy nos enfrentamos a los reclamos de un litigante que alega tener un interés propietario sobre una vivienda pú-blica donde ha residido toda su vida, suficiente como para evitar el proceso de desahucio instado en su contra por la Administración de Vivienda Pública (A.V.P. o parte recurrida). Igualmente, aduce el Sr. Edwin Molina Figueroa (señor Molina o el peticionario) que no podía ser des-plazado de dicha vivienda a base de la política pública que promueve un ambiente digno para las personas con impe-dimentos debido a su condición de no vidente.
*462 I
Durante los últimos cincuenta y tres años de su vida, la señora Petra Figueroa Olivo (señora Figueroa) ocupó, me-diante arrendamiento, el Apartamento Núm. 2 del Edificio Núm. 19 del Residencial Enrique Catoni en Vega Baja (Apartamento) propiedad de la A.V.P. Igualmente, desde su nacimiento hace más de cincuenta años, el peticionario, a su vez hijo de la señora Figueroa, ha vivido en dicho Residencial.
En lo concerniente a este recurso, el 11 de junio de 2002 la señora Figueroa renovó su Contrato de Arrendamiento con la A.V.P. y designó al señor Molina como el otro miem-bro de la composición familiar autorizado a residir en la propiedad junto a ella.
Siguiendo el protocolo establecido en la reglamentación de la A.V.P., la señora Figueroa suscribió Complementos al Contrato de Arrendamiento anualmente. En los Comple-mentos correspondientes a los años 2002, 2003 y 2004 no se registró cambio alguno en lo concerniente a los integran-tes de la composición familiar autorizados a residir en el Apartamento. (1)
En el 2005 el señor Molina fue encontrado culpable por un delito grave al amparo de la Ley de Sustancias Contro-ladas de Puerto Rico, 24 L.P.R.A. see. 2101 et seq., por lo cual se le condenó a cumplir 6 años de prisión, ingresando a la cárcel el 19 de abril de 2005.
El 20 de mayo de 2005, mientras su hijo se encontraba en la cárcel, la señora Figueroa suscribió un Complemento al Contrato de Arrendamiento con la A.V.P. donde surgió como integrante exclusiva de la composición familiar con derecho a residir en el Apartamento.
Por su parte, el 27 de abril de 2006, el señor Molina *463 suscribió un acuerdo con la Oficina de Programa de Desvío y Comunitarios, entidad adscrita al Departamento de Co-rrección y Rehabilitación, mediante el cual se le permitió participar en el Programa de Pase Extendido por Condi-ción de Salud (Programa) debido a su ceguera. Véase 4 L.P.R.A sec. 1112(e). Según los términos de dicho Pro-grama, el señor Molina quedaría en la libre comunidad, aunque continuaría formando parte de la matrícula del Centro de Detención de Bayamón. Sentencia del Tribunal de Apelaciones, recurso Núm. KLRA200800547. A base de ello, a principios de mayo de 2006, el señor Molina regresó a residir con su madre en el Apartamento en cuestión.
Así las cosas, el 29 de junio de 2006 la señora Figueroa suscribió otro Complemento al Contrato de Arrendamiento donde, al igual que en 2005, se mantuvo designada como único miembro de la composición familiar con derecho a ocupar el Apartamento, a pesar de que para entonces con-vivía con el peticionario.
El 23 de mayo de 2007, por exigencia de la A.V.P, la señora Figueroa otorgó un nuevo Contrato de Arrendamiento.(2) Habida cuenta de que la arrendataria se encontraba encamada e imposibilitada de firmar, se estam-paron sus huellas digitales en el documento y compareció como testigo del otorgamiento del documento la Sra. Elba Matos, vecina del Residencial. Además, durante el otorga-miento estuvo presente una trabajadora social.
Dos días más tarde, el 25 de mayo de 2007 otro hijo de la señora Figueroa, el Sr. Luis Martínez Figueroa (señor Mar-tínez), hermano del aquí peticionario, suscribió un formu-lario de la A.V.P. titulado Hoja de Tutor, donde asumió la responsabilidad de representar a su madre en asuntos re-lacionados ante dicha agencia. En esa misma fecha, se otorgó un Complemento al nuevo Contrato de Arrenda-miento, en el cual una vez más se registró a la señora Fi *464 gueroa como la única residente del Apartamento. Nueva-mente se imprimieron las huellas digitales de la señora Figueroa en el documento, mientras que el señor Martínez, en calidad de tutor, lo suscribió.
En algún momento, el peticionario y el señor Martínez hicieron gestiones con la A.V.P. para incluir al señor Molina en el Contrato de Arrendamiento de su madre. Du-rante ese proceso, la Sra. Rosa Figueroa Alvarado, Admi-nistradora del Residencial Catoni, les orientó a los efectos de que, conforme a lo dispuesto en la reglamentación apli-cable, tenían que transcurrir más de tres años luego de extinguirse la sentencia correspondiente para que un con-victo pueda ser elegible para vivienda pública. No obs-tante, dicho proceso de solicitud no se completó, ya que el señor Molina nunca sometió su Certificado de Anteceden-tes Penales, requisito indispensable para el trámite.
Pasados unos meses, el 26 de agosto de 2007 la señora Figueroa falleció, pero el señor Molina se mantuvo resi-diendo en el Apartamento.
La A.V.P. intentó que el peticionario desalojara la pro-piedad por entender que éste no tenía un contrato que le otorgara el derecho a continuar ocupándola . Sus gestiones resultaron infructuosas, por lo que el 4 de octubre de 2007, el Gobierno de Puerto Rico, el Departamento de la Vi-vienda y la A.V.P., por conducto de MAS Corporation —en-tidad encargada de la administración del Residencial Ca-toni— presentaron una Demanda de desahucio en precario ante el Tribunal de Primera Instancia, Sala de Bayamón, conforme al procedimiento provisto en los Arts. 620 y si-guientes del Código de Enjuiciamiento Civil de 1933 (32 L.P.R.A. see. 2821 et seq.).
Con el propósito de impedir su desalojo del Aparta-mento, el 16 de octubre de 2007, precisamente un día antes de ser emplazado, el señor Molina solicitó la intervención del Tribunal de Primera Instancia, Sala de Vega Baja, al amparo de la Ley Núm. 140 de 23 de julio de 1974, cono- *465 cida como Ley sobre Controversias y Estados Provisionales de Derecho, 32 L.P.R.A. sec. 2871 et seq. (Ley Núm. 140).
El 24 de octubre de 2007 dicho foro emitió una Resolu-ción Fijando un Estado Provisional de Derecho donde or-denó a la A.V.P., a través de MAS Corporation, a mantener al señor Molina en el Apartamento, o en otro apartamento del mismo Residencial, mientras su capacidad de perma-necer residiendo allí se ventilase en el curso ordinario de la ley. A esos efectos dictaminó lo siguiente:
La política pública de la Administración de Corrección y el Gobierno es la rehabilitación de la persona que le haya fallado a la sociedad. Además de darle apoyo a las personas con im-pedimento físico para que puedan tener una vida digna y productiva. No podemos abstraemos de ello y desecharlo a su suerte. Apéndice, pág. 78.
Mientras tanto, el procedimiento de desahucio continuó su curso en el Tribunal de Primera Instancia, Sala de Bayamón. El 19 de diciembre de 2007 se celebró una vista evidenciaría a la que comparecieron, en representación de la parte recurrida, la Sra. Rosa Figueroa Alvarado, Admi-nistradora del Residencial Catoni, y la Sra. Mayda Liz Iri-zarry Villegas, funcionaría encargada de la determinación de elegibilidad para admisión de vivienda. De la otra parte, compareció el peticionario junto al señor Martínez.
Conforme surge de la transcripción correspondiente, a pesar de que el tribunal le concedió un término al señor Molina para acudir a la A.V.P. y tramitar una solicitud de vivienda a su nombre, y no como continuación del contrato de su madre, el peticionario nunca completó dicho proceso en el tiempo asignado, por lo que la vista de desahucio se llevó a cabo según programada.
El peticionario alegó múltiples defensas al proceso de desahucio. Mediante su testimonio y el de su hermano, el peticionario intentó establecer que su madre, la señora Figueroa, sufría de demencia senil, condición que le imposi-bilitaba dar un consentimiento válido, razón por la que el *466 último Contrato de Arrendamiento otorgado entre ésta y la A.V.P. en mayo de 2007 era nulo. Argumentó que por dicho motivo continuaba en vigor el Contrato de Arrendamiento de junio 2002 donde él sí aparecía designado como parte de la composición familiar, lo cual le confería un derecho pro-pietario sobre el Apartamento. Igualmente planteó que, conforme la reglamentación aplicable, la A.V.P. estaba obli-gada a notificar por escrito su denegatoria a la solicitud de vivienda como parte del Contrato de Arrendamiento de la señora Figueroa. Por consiguiente, al así no hacerlo se le violó su derecho al debido proceso de ley.
Adujo que el procedimiento sumario de desahucio cons-tituía un mecanismo inapropiado para impugnar la Reso-lución Fijando un Estado Provisional de Derecho, emitido por el Tribunal de Primera Instancia, Sala de Vega Baja, respecto a lo decretado allí en lo atinente a un acomodo razonable conforme con la Americans with Disabilities Act, 42 U.S.C.A. sec. 12101 et seq. (ADA) y su derecho a la rehabilitación.
Oportunamente el Tribunal de Primera Instancia, Sala de Bayamón, emitió una Sentencia el 17 de enero de 2008 en la que declaró “ha lugar” la Demanda de desahucio e impuso al señor Molina el pago de $500 por temeridad. No aceptó, por lo tanto, las imputaciones de nulidad del Con-trato de Arrendamiento del 2007, ni las otras defensas al proceso alegadas por el peticionario. Manteniéndose firme en su determinación, el 8 de febrero de 2008 ese mismo foro denegó la solicitud de determinaciones de hechos adi-cionales instada por el señor Molina.
El 8 de abril de 2008 el señor Molina acudió al Tribunal de Apelaciones para impugnar la Sentencia de desahucio objeto de este recurso e imputó la comisión de ocho errores.(3) Entre ellos, adujo nuevamente la nulidad del *467 Contrato de Arrendamiento de mayo 2007 por la alegada incapacidad de su madre para prestar consentimiento de-bido a su demencia senil desde el 2005. Por ello, según el peticionario, aim formaba parte del contrato de arrenda-miento lo que justificaba su ocupación del inmueble. Alegó que ello suscitó un conflicto de título que no podía ser re-suelto en un procedimiento sumario de desahucio. Igual-mente, reclamó poseer un interés propietario sobre el Apartamento a base de lo decretado en la Resolución Fi-jando un Estado Provisional de Derecho. Invocó su derecho a un acomodo razonable conforme provisto en la ADA, así como su derecho a la rehabilitación y vivienda fijado en el Art. 4 de la Carta de Derecho de las Personas con Impedi-mentos, Ley Núm. 238-2004 (1 L.P.R.A. sec. 512a(c)). Plan-teó, además, violaciones a su derecho al debido proceso de ley. Primeramente, al no notificársele por escrito la deter-minación de la A.V.P. respecto a su intento de solicitar vi-vienda continuada en el Apartamento. Segundo, por ex-cluírsele del Apartamento por haber sido convicto de delito sin cumplir con los procedimientos establecidos en el Re-glamento para la Selección, Admisión y Ocupación Conti-nuada en los Residenciales Públicos, Reglamento Núm. 6391 de la Administración de Vivienda Pública, 31 de enero de 2002 (Reglamento Núm. 6391). Por último, refutó la determinación de temeridad.
El 18 de diciembre de 2008 el foro apelativo intermedio emitió una Sentencia en la que confirmó el fallo de desahu-cio emitido por el tribunal de instancia. Decretó que el se- *468 ñor Molina quedaba descalificado para residir en el Apar-tamento por su récord criminal en virtud de lo dispuesto en el Reglamento Núm. 6391 y tampoco cualificaba para vi-vienda continua por no formar parte del núcleo familiar conforme el Complemento de Contrato vigente al morir la señora Figueroa. En cuanto al argumento de debido pro-ceso de ley basado en la alegada falta de notificación de la denegatoria a la solicitud para ser incluido en el contrato de su madre, notó que el peticionario no había completado el proceso de solicitud correspondiente. Concluyó, además, que la señora Figueroa no padecía de demencia senil cuando suscribió el Contrato de Arrendamiento más re-ciente en el 2007. También confirmó la temeridad del señor Molina.
Es de esa Sentencia que el señor Molina recurrió ante este Tribunal, en apelación, consignando los seis errores siguientes:
[1.] Erró el Honorable Tribunal de Apelaciones al declarar que procede el desahucio en precario de manera sumaria, sin haber tomado en cuenta lo resuelto en el estado provisional de derecho, y resolver que el Sr. Edwin Molina Figueroa no forma parte de un contrato de arrendamiento que justifica la posesión del inmueble sito en el Residencial Catoni.
[2.] Erró el Honorable Tribunal de Apelaciones al determinar que procede el desahucio en precario del Sr. [Molina Figueroa] sin tomar en consideración que el apelante es un ciudadano con impedimento visual, en violación a la clara política p[ú]blica de que toda persona con impedimento viva en un ambiente de tranquilidad [,] respeto y dignidad que satisfaga sus necesidades básicas de rehabilitación y vivienda.
[3.] Erró el Honorable Tribunal de Apelaciones al resolver que la notificación verbal hecha por la agencia, en la que le “informan” al Sr. Molina Figueroa que no cualificaba para una nueva vivienda, se hizo conforme al debido proceso de ley según establecido en el Reglamento para la Selección, Admisión y Ocupación Continuada en los Residenciales Públicos (Reglamento Núm. 6391 de 31 de enero de 2002).
[4.] Erró el Honorable Tribunal de Apelaciones al determinar que la exclusión del Sr. [Molina Figueroa] del contrato no viola el debido proceso de ley porque se hizo en cumplimiento con el Reglamento para la Cancelación de Contrato y/o Realizar Re- *469 examen Especial y/o Transferir el Contrato a Remanentes de Familia por Actividad Criminal (Reglamento Núm. 6416 de 25 de marzo de 2002).
[5.] Erró el Honorable Tribunal de Apelaciones al resolver que la Ley Número 171 de 4 de diciembre de 2002 y el mencionado Reglamento 6391 disponen que una persona que haya incurrido en conducta criminal queda automáticamente descalificada para ser admitida o continuar como residente en un residencial público.
[6.] Erró el Honorable Tribunal de Apelaciones al resolver que el recurrente Sr. [Molina Figueroa] actuó con temeridad al reclamar la vindicación de sus derechos. Apelación, pág. 8.
Oportunamente acogimos el presente recurso como cer-tiorari y el 15 de junio de 2009 expedimos el auto solicitado. Posteriormente, el 12 de mayo de 2010, luego de examinados los méritos de la Moción en Auxilio de Juris-dicción presentada por la parte peticionaria, declaramos con lugar la solicitud de paralización de la Orden de Lan-zamiento de 29 de abril de 2010 dictada por el Tribunal de Primera Instancia, Sala de Bayamón.
Con el beneficio de la comparecencia de ambas partes y estando en posición para resolver, procedemos a así hacerlo.
HH I — 1
Aunque se plantean múltiples errores en el recurso, como cuestión fundamental debemos resolver si el señor Molina tiene, según alega, un derecho propietario sobre el Apartamento que pretende retener, suficiente como para activar las garantías del debido proceso de ley frente a la A.V.P. y, de este modo, crear un conflicto de título oponible al desahucio.
Previo a adentrarnos en los méritos de la controversia según esbozada por el peticionario, es menester repasar algunos apuntes sobre las garantías constitucionales sal-vaguardadas por el derecho al debido proceso de ley que *470 permea nuestro ordenamiento. Este derecho fundamental, el cual tiene sus orígenes desde la época de la Carta Magna, está consagrado en la Sec. 7 del Art. II de nuestra Constitución, Const. P.R., L.P.R.A., Tomo 1, ed. 2008. Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1, 35 (2010); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 273 (1987). Tomando como modelo las Enmiendas V y XIV de la Constitución federal,(4) se establece que “[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley Art. II, Sec. 7, Const. P.R., supra, pág. 296. Domínguez Castro et al. v. E.L.A. I, supra, pág. 35; Rivera Santiago v. Srio. de Hacienda, supra, pág. 273.
Aunque de su denominación este derecho cardinal con-lleva una connotación puramente procesal, es regla bien conocida que “[e]l debido proceso de ley se manifiesta en dos dimensiones: la sustantiva y la procesal”. Domínguez Castro et al. v. E.L.A. I, supra, pág. 35.
Bajo el debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos funda-mentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. (Enfasis en el original y citas omitidas). Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887 — 888 (1993).
De ahí surge que, independientemente del proceso uti- *471 lizado para la aplicación de esta doctrina, el debido proceso de ley puede menoscabarse ya sea por el contenido de una legislación o como consecuencia de una actuación gubernamental. Domínguez Castro et al. v. E.L.A. I, supra, pág. 38; Rivera Rodríguez & Co. v. Lee Stowell, etc., supra; J.J. Alvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 629.
El criterio rector reconocido por este Foro en lo atinente al derecho que aquí nos concierne, entiéndase el debido proceso de ley en su vertiente procesal, es que el procedi-miento que lleve a cabo el Estado al afectar un interés propietario o la libertad de un individuo sea uno justo e imparcial. Hernández v. Secretario, 164 D.P.R. 390, 395 (2005). “El propósito de esta garantía elemental de nuestro ordenamiento jurídico es prevenir que el Estado abuse de sus poderes o que los ejerza de forma arbitraria, en perjui-cio del individuo”. San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640, 659 (2008).
Hemos decretado que el debido proceso de ley “no es un molde riguroso que se da en el abstracto”, sino que está atado a los contextos en que éste se suscita, toda vez que “[c]ada caso exige una evaluación concienzuda de las cir-cunstancias envueltas”. P.A.C. v. E.L.A. I, 150 D.P.R. 359, 376 (2000). El debido proceso de ley es, en síntesis, “una de esas fórmulas elásticas de justicia sustancial que no es susceptible de definición genérica. No es una norma invariable que pueda aplicarse por su propia virtualidad indepen-dientemente de las circunstancias que median el caso”. Domínguez Castro et al. v. E.L.A. I, supra, pág. 46, citando a Santiago v. Jones, 74 D.P.R. 617, 621-622 (1953).
Sin embargo, antes de examinar si en efecto en este caso se concretó una violación al debido proceso en su modali-dad procesal, es imperativo confirmar que dicha garantía es exigible, ya que no todo interés es merecedor de su protección. Board of Regents of State Colleges v. Roth, 408 *472 U.S. 564, 570 (1972). “[C]uando analizamos un plantea-miento de violación al debido proceso de ley en su vertiente procesal, debemos determinar, primeramente, si existe un derecho propietario o libertario que merezca la correspon-diente protección constitucional”. Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 397 (2011). Para hacer tal deter-minación, es necesario evaluar la naturaleza del interés en precario, específicamente, si es uno que cae bajo la sombri-lla de la Enmienda Catorce de la Constitución federal. Board of Regents of State Colleges v. Roth, supra, págs. 570-571; Morrissey v. Brewer, 408 U.S. 471, 481 (1972).
En Board of Regents of State Colleges v. Roth, supra, el Tribunal Supremo federal reconoció el que un individuo puede gozar de cierto interés propietario sobre un beneficio adquirido.(5) No obstante, este concepto ciertamente tiene sus limitaciones, las cuales se han ido identificando jurisprudencialmente. Por ejemplo, una expectativa unilateral de recibir algún beneficio no se traduce automática-mente en un interés propietario digno de la protección ofre-cida al amparo de un debido proceso de ley.
To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it ....
Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. (Enfasis nuestro). Board of Regents of State Colleges v. Roth, supra, pág. 577. Véase, además, Morales Narváez v. Gobernador, 112 D.P.R. 761, 767 esc. 5 (1982) (“El concepto de interés propietario rechaza la expec-tativa unilateral ...”, énfasis suprimido).
*473 Por consiguiente, las garantías constitucionales del de-bido proceso de ley no protegen cualquier concepto que pueda ser descrito o considerado como un mero beneficio. Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005). Más bien, tiene que existir un derecho propietario legítimo y concreto para poder invocar el amparo de las salvaguardias que provee el derecho a un debido proceso de ley. íd.; Perry v. Sindermann, 408 U.S. 593, 601 (1972) (“A person’s interest in a benefit is a ‘property’ interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing”); Board of Regents of State Colleges v. Roth, supra, pág. 577.
Ahora bien, una vez se determina que, en efecto, existe un derecho propietario afectado por el Estado, corresponde resolver qué proceso amerita las circunstancias particula-res presentadas en un caso. Calderón Otero v. C.F.S.E., supra, pág. 398. “Once it is determined that due process applies, the question remains what process is due”. Morrissey v. Brewer, supra, pág. 481. Véanse, además: Álamo Romero v. Adm. de Corrección, 175 D.P.R. 314, 329 (2009); P.A.C. v. E.L.A. I, supra, pág. 376; Rivera Santiago v. Srio. de Hacienda, supra, pág. 274.
A través de la jurisprudencia se han identificado los si-guientes requisitos procesales como fundamentales para garantizar que se haya observado y cumplido con las sal-vaguardas impuestas por el debido proceso de ley: (1) una notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) una oportunidad de ser oído; (4) el dere-cho a contrainterrogar a los testigos y examinar la eviden-cia presentada en su contra; (5) el tener asistencia de abo-gado, y (6) que la decisión se base en el contenido del expediente del caso. Calderón Otero v. C.F.S.E., supra, pág. 399; Hernández v. Secretario, supra, págs. 395-396.
Tomando estos preceptos como guía, procedemos a ana-lizar si el señor Molina fue propiamente desahuciado del *474 Apartamento por no gozar de un interés propietario o si, por el contrario, el trámite utilizado por la A.V.P. para estos fines menoscabó sus derechos constitucionales.
III

Reglamento Núm. 6391

Se hizo formar parte integral de los mencionados Con-tratos de Arrendamiento, entre otros, el Reglamento Núm. 6391. Al encontrarse los contratos subordinados a dicho reglamento, es necesario estudiarlos para auscultar los términos y condiciones que gobiernan el arrendamiento aquí en controversia.
El Reglamento Núm. 6391 establece “las normas que rige la Selección, Admisión y Ocupación Continuada en los Residenciales Públicos ...”. Art. II, pág. 2. Provee, además, que toda solicitud considerada para admisión de vivienda deberá ser acompañada de, entre otros documentos, un cer-tificado de antecedentes penales del solicitante. Art. VI(B)(1)(d), pág. 22. Una vez examinados los datos básicos de la solicitud, un funcionario de la A.V.P. clasificará al solicitante como “aparentemente elegible, o inelegible”. Art. VI(E)(1), pág. 24. En el caso que el solicitante o algún miembro de la familia tenga historial criminal, será nece-sario verificar si han transcurrido al menos tres años desde la fecha en que se completó la sentencia hasta la fecha de presentación de la solicitud. El Reglamento claramente dispone que “ [s] i no ha transcurrido dicho término la soli-citud es inelegible por actividad criminal”. Art. VI(E)(6)(d)(1), pág. 29.
Por otra parte, para un individuo ser elegible para la ocupación continuada de una vivienda pública, es menes-ter que sea un miembro de la composición familiar identi-ficada como tal en el Contrato de Arrendamiento y que cumpla “con todos los requisitos de ocupación”. Art. XIII(A) de Reglamento 6391, pág. 46.
*475 Mediante revisiones periódicas a efectuarse al menos una vez al año, se examinarán las circunstancias de los arrendatarios y los miembros de la composición familiar con el propósito de asegurar el cumplimiento con los requi-sitos de elegibilidad pertinentes. Art. XIV de Reglamento 6391, pág. 46. Como parte del trámite para la ocupación continuada, cada jefe de familia está obligado a completar una solicitud a esos efectos. Art. XIV(A)(2)(a), pág. 47. En-tre los documentos requeridos como parte del reexamen periódico, se encuentra igualmente un certificado de ante-cedentes penales de cada miembro del grupo familiar que sea mayor de edad. Art. XIV(A)(2)(a)(2)(c), pág. 47.
Por último, el Reglamento 6391 también provee para cuando el jefe de familia muere. Sobre este particular dis-pone que “se resolverá el Contrato y se ejecutará uno nuevo que firmará un miembro de la familia declara [do] como tal en el Contrato de Arrendamiento que reúna los requisitos de elegibilidad para ocupación continuada y se haya quedado en la vivienda como remanente de la familia”. Art. XVII(3)(a), pág. 55.
IV

Desahucio

Según lo dispuesto en el Art. 621 del Código de Enjui-ciamiento Civil de 1933 (32 L.P.R.A. sec. 2822), “[p]rocederá el desahucio contra ... cualquier ... persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna”.
Se dará paso al desahucio en precario cuando no exista un conflicto de título sobre la propiedad cuya posesión se reclama. En dicho caso, es necesario que el reclamante po-sea derecho o título que justifique su ocupación. C.R.U.V. v. Román, 100 D.P.R. 318 (1971); Martínez Santiago v. Dalmau Andrades, 93 D.P.R. 191 (1966).
Existe conflicto de título cuando el demandado presenta prueba suficiente tendente a demostrar su derecho a ocu- *476 par el inmueble en controversia y que tiene un título tan bueno o mejor que el del demandante. C.R.U.V. v. Román, supra, pág. 322. La controversia sobre conflicto de título debe dilucidarse mediante un juicio ordinario. Véase, por ejemplo, C.R.U.V. v. Román, supra, pág. 321.
La característica medular de un procedimiento civil sumario es lograr, lo más rápido y económicamente posible, la reivin-dicación de determinados derechos, reduciendo al mínimo constitucionalmente permisible el elenco de garantías procesales. Conlleva acortar términos —en ocasiones, hacerlos improrrogables— y prescindir de ciertos trámites comunes al proceso ordinario sin negar al demandado o querellado una oportunidad real de presentar efectivamente sus defensas. Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234 (1992).
V

Nulidad del Contrato de Arrendamiento del 2007

El derecho reclamado por el señor Molina en relación con el Apartamento descansa en el Contrato de Arrenda-miento originalmente otorgado por la señora Figueroa en junio de 2002. El peticionario sostiene que el contrato fir-mado en el 2007 resulta nulo. Como fundamento para ello alega que, para ese entonces, la capacidad de su madre para prestar consentimiento se encontraba afectada por demencia senil. Plantea, por lo tanto, que el contrato fir-mado en el 2002, donde él todavía aparecía designado como parte del grupo familiar destinado a ocupar la vivienda, continúa vigente.
Luego de escuchar el testimonio presentado en la vista y, conforme la evidencia sometida para su consideración, el foro de instancia declaró “con lugar” la Demanda de desahucio. A base de ello, resulta forzoso concluir que al juzgador sopesar el testimonio del peticionario y del señor Martínez, atinente a la incapacidad mental de su madre, y a la luz de la totalidad de la prueba que tuvo ante sí, des- *477 cartó la versión de nulidad propuesta por no merecerle credibilidad.
En aquellos casos en que el ejercicio de nuestra función revisora conlleva evaluar determinaciones de hechos y ad-judicaciones de credibilidad realizadas por el tribunal pri-mario, nuestro examen estará guiado por el criterio de deferencia. Así pues, respetaremos los dictámenes del juz-gador, excepto cuando éste haya incurrido en pasión, pre-juicio, parcialidad o error manifiesto en la apreciación de la prueba. Rivera Menéndez v. Action Service, 185 D.P.R. 431 (2012); Pueblo v. García Colón I, 182 D.P.R. 129 (2011); Laboy Roque v. Pérez y otros, 181 D.P.R. 718 (2011). De este modo reconocemos la importancia del comportamiento de un testigo en el entorno de una sala judicial al aquilatar su credibilidad. Rivera Menéndez v. Action Service, supra; Pueblo v. García Colón I, supra; Laboy Roque v. Pérez y otros, supra.
Durante la vista de desahucio el señor Martínez indicó, en términos no específicos, que su madre había sufrido un derrame cerebral y padecía de Alzheimer; en ocasiones se olvidaba de las cosas; no podía hacerse cargo de sus finan-zas, y necesitaba atención constante. El peticionario, por su parte, testificó lo siguiente en relación con la condición mental de su madre: “creo que le habían dado unos peque-ños infartos” y a veces no reconocía a sus familiares o no recordaba quién era y se le olvidaban las cosas.
Sin embargo, al examinar con detenimiento el testimo-nio vertido ante el foro de instancia en lo atinente a la capacidad de la señora Figueroa, notamos que éste fue uno generalizado. Aparte de ello, no se detallaron fechas para poder deducir en qué momento específico, luego del 2004, la señora Figueroa supuestamente perdió sus facultades mentales. Tampoco se sometió evidencia médica para sus-tentar las alegaciones de incapacidad mental.
Por otra parte, los documentos que obran en autos, así como las explicaciones suministradas durante la vista, *478 apoyan tanto la validez de los tres Complementos al Con-trato otorgados entre los años 2005 al 2007, como la del Contrato de Arrendamiento ejecutado en mayo de 2007. En ninguno de estos escritos se hace referencia al señor Molina.
Por disposición expresa consignada en el Art. XTV(J) del Reglamento Núm. 6391,(6) el Complemento al Contrato pasa a formar parte del Contrato de Arrendamiento el cual se entenderá enmendado por los cambios consignados en los Complementos al Contrato suscritos subsiguiente-mente.
Los Complementos al Contrato correspondientes a los años 2002, 2003 y 2004 identificaban a la señora Figueroa y al peticionario como los componentes del grupo familiar. Sin embargo, indicó la Administradora del Residencial que, en el año 2005 la señora Figueroa sometió una certi-ficación para dar de baja al peticionario del Contrato de Arrendamiento. Como razón para ello expuso lo siguiente: “confinado con una sentencia de seis años”. Cónsono con lo anterior, en los Complementos a los Contratos suscritos en los años 2005 y 2006 por la señora Figueroa, aparece ésta como única inquilina del Apartamento.
A pesar de que para el otorgamiento del Contrato de Arrendamiento el 23 de mayo de 2007 la señora Figueroa estaba encamada e imposibilitada de firmarlo, se impri-mieron sus huellas en el documento y compareció como testigo una vecina del lugar para dar fe de lo allí acontecido. Una trabajadora social también estuvo pre-sente durante el proceso. De otra parte, obra en autos una certificación donde consta haberse orientado a la señora *479 Figueroa de manera especial previo a otorgarse el Contrato de Arrendamiento. Igualmente, en dicha certificación apa-recen las huellas de la señora Figueroa, así como la firma de la misma testigo que compareció cuando se suscribió el Contrato de Arrendamiento. Toda esta formalidad abona a la validez del acto.
Más importante aún, en el Complemento al Contrato fechado 25 de mayo de 2007, o sea con posterioridad al Contrato de Arrendamiento suscrito por el señor Martínez en calidad de tutor de su madre, tampoco se incluyó al señor Molina como parte de la composición familiar con derecho a ocupar la vivienda. Ello significa que, a través de este documento, el señor Martínez reiteró lo dispuesto dos días antes por la señora Figueroa, a los efectos de que ella era la única residente del Apartamento para efectos del contrato.
Consideramos que, según consignado en la propia Hoja de Tutor, la designación del señor Martínez como “tutor”, efectuada el 25 de mayo de 2007, fue estrictamente para propósitos de que fuera la persona responsable de dar cum-plimiento con los términos del Contrato de Arrendamiento, así como de realizar los pagos y otras gestiones frente a la A.V.P., ya que la arrendataria estaba encamada. Sin embargo, ello no comprendió una determinación de senilidad por un facultativo médico, como tampoco por los tribunales. Por consiguiente, no constituye evidencia de que la señora Figueroa careciese de capacidad legal para contratar posterior al 2002.
A base del expediente, resulta razonable la determina-ción de validez del Contrato de Arrendamiento del 2007, así como los Complementos al Contrato correspondientes a los años 2005, 2006 y 2007. Decretamos, por tanto, que dicho dictamen no se deriva de pasión, prejuicio, parciali-dad o error manifiesto. De otra parte, surge claramente que la exclusión del peticionario para efectos del Aparta-mento fue originada por la propia señora Figueroa en el *480 2005 y no por la A.V.P. como sugiere la parte peticionaria. Los Complementos a Contrato subsiguientes a esa fecha, al igual que el Contrato de Arrendamiento del 2007, así lo reiteran.
VI

Interés propietario

Conforme los principios de derecho aplicable, el señor Molina venía obligado a probar su interés propietario sobre la propiedad en cuestión para activar entonces su derecho a las garantías procesales del debido proceso de ley como defensa oponible frente a la Demanda de desahucio. Veamos.
El Contrato de Arrendamiento original fue suscrito por la señora Figueroa y la A.V.P. En el mismo aparece desig-nado el señor Molina como parte del grupo familiar con derecho a ocupar regularmente la vivienda. Dicho contrato comenzó a regir desde junio de 2002 y, según surge del mismo, “continuará vigente mientras el Arrendatario y su familia reúnan los requisitos para ser residentes de vi-vienda pública, de acuerdo con lo que establezcan las leyes y reglamentos aplicables a los beneficios del Programa de Vivienda Pública, y mientras cumplan con las cláusulas y condiciones estipuladas en este contrato”. Apéndice, pág. 81.
No obstante, de los autos se deduce que en el 2005, me-diante el Complemento al Contrato que se produjo en esa fecha como parte del proceso rutinario del reexamen regular, el nombre del señor Molina no fue incluido en el refe-rido contrato por su señora madre. Cabe notar que para entonces éste había ingresado a prisión. Este hecho es de crucial importancia porque marca el momento en que se desvinculó al señor Molina de su derecho a vivir en el Apartamento junto a la señora Figueroa. No obra en autos *481 evidencia alguna que acredite que dicha eliminación se realizó por iniciativa de la A.V.P. en violación al procedi-miento establecido en el Reglamento para excluir a un residente. Por el contrario, conforme la documentación so-metida en el caso, es innegable que dicha eliminación se debió a la exclusiva voluntad de la señora Figueroa al así consignarlo expresamente en el proceso del reexamen regular de su vivienda.
A pesar de que el señor Molina regresó a residir al Apar-tamento alrededor de mayo de 2006, luego de salir de la cárcel, la señora Figueroa, en calidad de jefe de familia, nunca volvió a incluirlo como parte de la composición familiar con derecho a ocupar el mismo, a pesar de las oportu-nidades que tuvo para hacerlo. A esos efectos, notamos que no se mencionó al peticionario ni en el Complemento al Contrato de junio de 2006, ni en el nuevo Contrato de Arrendamiento suscrito el 23 de mayo de 2007, ni en el Complemento al Contrato de 25 de mayo de 2007.
Por consiguiente, conforme la reglamentación aplicable, desde el año 2005 el señor Molina no tiene interés propie-tario alguno que conste en un Contrato de Arrendamiento con la A.V.P.
El señor Molina alega que, el hecho de que la Adminis-tración del Residencial conocía que residía en el Aparta-mento desde su salida de prisión, le confirió un interés propietario sobre el Apartamento. Sin embargo, el aludido conocimiento al que se refiere el peticionario, combinado con la alegada inacción por parte de la A.V.P., sin más, no se traduce en un interés propietario sujeto a las proteccio-nes del debido proceso de ley. Es decir, la expectativa unilateral de continuar ocupando el Apartamento por el mero hecho de haber residido allí toda su vida, pero, sin formar parte del contrato desde el 2005, no es suficiente. Según señalamos anteriormente, “[e]n nuestra jurisdicción, para que se active la referida protección constitucional que otorga este derecho en su vertiente procesal, es necesario *482 que exista un interés individual de libertad o propiedad”. Calderón Otero v. C.F.S.E., supra, pág. 398.
En resumen, al momento en que falleció la señora Figueroa, el señor Molina no formaba parte del Contrato de Arrendamiento con la A.V.P., lo cual le hubiese permitido solicitar la ocupación continuada del Apartamento. Por lo tanto, la A.V.P. no estaba obligada a utilizar una vía al-terna al procedimiento de desahucio para obligarlo a aban-donar el mismo.
VII
Aun cuando resolvemos que el señor Molina no tiene un derecho cobijado por el debido proceso de ley, en lo atinente a su reclamación de continuar ocupando el Apartamento por no formar parte del Contrato de Arrendamiento con la A.V.P., entendemos prudente atender, aunque brevemente, los primeros cinco errores señalados por el peticionario en su recurso.(7)
En su primer señalamiento de error, aduce el peticiona-rio que al disponer del desahucio mediante el procedi-miento sumario la determinación del tribunal de instancia estaba condicionada por lo dictaminado previamente en la Resolución Fijando un Estado Provisional de Derecho.
Según señalado en su Exposición de Motivos, la Ley Núm. 140 fue promulgada con el propósito de “establecer un procedimiento de ley rápido, económico y eficiente para la adjudicación provisional de controversias por los Jueces Municipales y los Jueces de Distrito”. 32 L.P.R.A. sec. 2871 n. Como el propio título sugiere, el estado provisional de derecho constituye una determinación de naturaleza tem-porera dirigida a atender una situación entre las partes que amerita intervención judicial inmediata. Se ha consig-nado expresamente en el estatuto que una orden emitida *483 bajo el palio de esta ley no dispone de los derechos recla-mados en sus méritos, por lo que no tiene efecto de cosa juzgada.(8)
Contrario a lo que alega el peticionario, y según aquí se explica, en el trámite del desahucio no se concretizó un conflicto de título, por lo que correspondía al tribunal de instancia proceder a través del procedimiento sumario.
De otra parte, a tenor con la Ley Núm. 140 entendemos que, independientemente del asunto adjudicado conforme a sus disposiciones, el foro juzgador no venía obligado por el mismo. Su rol era atender el asunto del desahucio con-forme la prueba que tuvo ante sí.(9)
Por consiguiente, no se cometió el error señalado.
Por otra parte, como segundo señalamiento, el peticio-nario impugna la procedencia del desahucio basado en la política pública que promueve un ambiente digno para las personas con impedimentos. Sin embargo, no cita precepto de ley alguno que, a base de su impedimento, lo exima del cumplimiento cabal de los requisitos establecidos para te-ner derecho a residir en una vivienda pública en Puerto Rico. Quedó claro que, aparte de no haber sometido todos los documentos exigidos como parte de la solicitud de vi-vienda pública por derecho propio, el peticionario tampoco aparecía designado como componente de la unidad familiar en el Contrato de Arrendamiento del 2007, elemento indispensable para cualificar para la ocupación continuada del Apartamento.
*484 Por consiguiente, carece de mérito el argumento relacio-nado con el segundo señalamiento de error alegado.
Próximo, el peticionario sostiene que erró el tribunal al resolver que la alegada notificación verbal de la A.V.P., me-diante la cual le informó que no cualificaba para ser in-cluido en el grupo familiar del Contrato de Arrendamiento de su madre, estuvo acorde a las disposiciones del Regla-mento 6391.
Lo único que consta en el expediente, en lo atinente a una posible notificación, es la orientación provista por la Sra. Rosa Figueroa Alvarado en la cual se hizo referencia a los documentos necesarios para que el peticionario solici-tara su inclusión en el contrato de su madre. Al adentrarse en el contenido de la reglamentación, se le informó ade-más, que posiblemente éste no cualificaría debido a su ré-cord criminal. Sin embargo, una mera orientación sobre los pormenores de un reglamento que se presume es de cono-cimiento general no constituye, de por sí, una notificación de denegatoria formal por parte de la A.V.P.
Cabe señalar que la A.V.P. no tenía razón para actuar sobre dicha solicitud hasta tanto la parte interesada hi-ciera entrega de todos los documentos reglamentarios. Cónsono con lo anterior, la agencia no estaba obligada a proveer notificación formal alguna en lo referente a este asunto.(10)
Por consiguiente, este error también carece de méritos.
Lo propuesto en el cuarto error amerita aclaración. Se-gún el señor Molina, su exclusión del contrato violó su de-recho a un debido proceso de ley porque no se hizo acorde a las disposiciones del Reglamento para la Cancelación de Contrato y/o Realizar Reexamen Especial y/o Transferir el Contrato a Remanentes de Familia por Actividad Criminal, Reglamento Núm. 6416 de la Administración de Vi- *485 vienda Pública de 25 de marzo de 2002 (Reglamento 6416).(11) El mismo establece el procedimiento que debe utilizarse para la cancelación del contrato de vivienda pú-blica, dar de baja a un miembro de la composición familiar o transferir el contrato en razón de actividad criminal. íd., Art. 2, pág. 1.
No se deduce de los autos que el desahucio instado en su contra haya sido motivado en razón de actividad criminal del peticionario según provisto en el Reglamento 6416. Le-jos de llegar a la conclusión atribuida, el Tribunal de Ape-laciones se limitó a indicar que el desahucio procedía ya que el señor Molina no cualificaba para la “ocupación con-tinuada” por su expediente criminal.
No obstante, independientemente de que su historial delictivo lo hiciese inelegible, aclaramos que el señor Molina no podía solicitar ocupación continuada debido a que, como requisito para ello, tenía que formar parte de la com-posición familiar en el correspondiente Contrato de Arrendamiento. Acorde expusimos anteriormente, para la fecha en que murió la señora Figueroa, el nombre del señor Molina ya no constaba en dicho documento. Este había ce-sado de ser parte del grupo familiar en el Contrato de la arrendataria desde el 2005.
Contrario a lo intimado por el señor Molina, el proceso de desahucio no estuvo fundamentado en sus actividades criminales según dictaminado en el Reglamento 6416. Más bien la A.V.P. actuó basada en la falta de un derecho de posesión asentado en la reglamentación aplicable indepen-diente de sus antecedentes penales. El peticionario no te-nía derecho a la ocupación continuada del Apartamento ya que no aparecía como miembro del grupo familiar. Tam-poco había completado el proceso para solicitar vivienda pública por derecho propio puesto que faltaba su Certifi- *486 cado de Antecedentes Penales para la A.V.P. poder considerarla.
El peticionario aduce en el quinto error que las disposi-ciones de la Ley 171-2001 (17 L.P.R.A. sec. 1015 et seq.) (Ley 171-2001), no establecen que la conducta criminal opera como exclusión automática para ser admitido a vi-vienda pública o continuar residiendo en dicho lugar.
El mencionado estatuto respondió a la directriz emitida por la Administración del Presidente William J. Clinton en el año 1996, conocida comúnmente como “Una falta y estás fuera”, mediante la cual se procuró mantener las viviendas públicas libres de drogas y actividad criminal. Exposición de Motivos de la Ley 171-2001, (Parte 1) Leyes de Puerto Rico 860. Acorde con el mandato federal, a través del men-cionado estatuto se implantaron medidas para la cancela-ción de un Contrato de Arrendamiento de vivienda pública en casos de incumplimiento de contrato en razón de activi-dad criminal.
De entrada, cabe mencionar que dichas disposiciones es-tatutarias van dirigidas al arrendatario que guarda una relación contractual con la A.V.P. Por ende, le son inaplica-bles al peticionario quien no forma parte de un Contrato de Arrendamiento.
De todos modos, tampoco existe evidencia de que se le haya desahuciado por conducta criminal. Previo a la Sen-tencia de desahucio, no se calificó la idoneidad del señor Molina para ocupar el Apartamento a base de su historial criminal. La A.V.P. no estaba en posición de hacerlo puesto que el peticionario no cumplía con el requisito de constar en el Contrato de Arrendamiento de la señora Figueroa, requisito indispensable para la ocupación continuada. Tampoco tenía ante sí una solicitud de vivienda por dere-cho propio debidamente complementada con los documen-tos de rigor.
*487 VIII
Por último, el peticionario impugna la imposición de una sanción por temeridad y, al respecto, señala que no actuó con temeridad al reclamar la vindicación de sus derechos.
Este Tribunal se ha expresado estableciendo que el con-cepto de temeridad es uno amplio. Blás v. Hosp. Guadalupe, 146 D.P.R. 267 (1998).
La temeridad es “aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesaria-mente o que obliga que la otra parte incurra en gestiones evitables”. Marrero Rosado v. Marrero Rosado, 178 D.P.R. 476, 504 (2010); Colón Santos v. Coop. Seg. Mult. P.R., 173 D.P.R. 170 (2008).
Como regla general, un tribunal apelativo sólo interven-drá con urna determinación de temeridad si media un claro abuso de discreción. Dicha determinación descansa en la sana discreción del tribunal sentenciador. S.L.G. Flores-Jiménez v. Colberg, 173 D.P.R. 843, 866 (2008).
El profesor Hernández Colón estima que “[l]a temeridad se determina en virtud de la claridad del derecho aplicable y de los hechos demostrablemente ciertos”. R. Hernández Colón, Derecho procesal civil, 5ta ed., San Juan, Lexis Nexis, 2010, pág. 391.
Luego de examinados los autos, y ante los hechos tan particulares que informa esta causa y que ameritó nuestra intervención, somos de la opinión que el peticionario no fue temerario. Por consiguiente, entendemos que se cometió el error señalado.
IX
En resumen, la revisión interpuesta en este recurso se limita a verificar si existe defensa oponible al desahucio *488 por el peticionario contar con un derecho para permanecer en la propiedad. Según explicamos anteriormente, no le cobijaba tal derecho al señor Molina ni bajo la reglamenta-ción de la A.V.P. ni a base de los estatutos citados en su escrito.
No obstante, hacemos la siguiente salvedad. Aunque es nuestro deber ministerial aplicar estrictamente el derecho relevante a los hechos del caso, este Tribunal es sensible a la penosa situación por la que atraviesa el señor Molina quien, a su avanzada edad y con impedimento visual, está al borde de ser desplazado de la única vivienda que conoce. Notamos que en la Sentencia emitida por el Tribunal de Apelaciones, KLRA20080572, se hace constar que la pena de prisión impuesta al señor Molina “se extinguirá ... el 25 de noviembre de 2008”. Si en efecto, para el 2008 el peti-cionario ya cumplió con el término impuesto en su senten-cia criminal, ello le daría una oportunidad para cambiar radicalmente su destino en términos de un lugar para vivir.
El Reglamento 6391 dispone que una solicitud de vi-vienda será inelegible por historial criminal si a la fecha de su presentación no han transcurrido más de tres años desde que se completó la sentencia. Art. VI(E)(6)(d)(l)(i) del Reglamento Núm. 6391, pág. 29. En el caso del señor Molina, dicho periodo de no elegibilidad venció a finales del mes de noviembre de 2011. Por lo tanto, entendemos que en la actualidad el peticionario cualificaría para vivienda pública, de cumplir con los otros requisitos reglamentarios pertinentes(12) y así esperamos que suceda.
Este caso presenta a un individuo con impedimento visual *489 (13) quien ya pagó su deuda con la sociedad y, como cuestión de justicia, amerita se le brinde la oportunidad de corregir la situación de vivienda anómala por la que atraviesa.
X
A base de los fundamentos antes expuestos, se modifica la Sentencia emitida por el Tribunal de Apelaciones el 18 de diciembre de 2008 para eliminar la suma de $500 im-puesta por temeridad. Así modificada, se confirma,(14)
Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Estrella Martínez disintió con una opinión escrita, a la cual se unieron el Juez Presidente Señor Hernández Denton, la Jueza Aso-ciada Señora Fiol Matta y la Juez Asociada Señora Rodrí-guez Rodríguez.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 Los Complementos al Contrato se efectúan como parte de la revisión anual de los arrendatarios. Estos reflejan cambios pertinentes al Contrato de Arrenda-miento, tales como ajustes a la renta y a la composición del grupo familiar.

 Debido a cambios en la reglamentación de la A.V.P. se requirió, en ese año en particular, que todos los residentes del Residencial firmaran un nuevo contrato.

 Cabe señalar que el 12 de febrero de 2008, previo a recurrir al Tribunal de Apelaciones, el peticionario sometió una solicitud formal de vivienda a su nombre para la consideración de la A.V.P. con el propósito de legalizar su ocupación del *467 Apartamento. Sin embargo, en esa misma fecha le fue notificado que resultaba inele-gible para residir en el Residencial a causa de su récord criminal. Este trámite administrativo estuvo sujeto a revisión judicial en dos ocasiones diferentes a través de los recursos KLRA200800572 y KLRA200900346. En ambos, mediante Sentencias de 22 de agosto de 2008 y 9 de junio de 2009, respectivamente, el Tribunal de Ape-laciones revocó las correspondientes denegatorias de vivienda emitidas por la A.V.R a base de faltas procesales, y devolvió el caso a la agencia para ser corregidas.
Habida cuenta de que la solicitud formal de vivienda a su nombre fue posterior a la Sentencia que concedió el desahucio, este trámite nunca estuvo ante la conside-ración del tribunal de instancia. Tampoco consta en autos la determinación final de la A.V.P. atinente a la solicitud del peticionario, por lo que no hay razón para consi-derar en el presente recurso dichos procesos paralelos.

 La Quinta Enmienda de la Constitución de los Estados Unidos, en lo que aquí nos concierne, reza: “Ninguna persona ... será privadla] de su vida, de su liber-tad o de su propiedad, sin el debido procedimiento de ley ...”. Emda. V, Const. EE. UU„ L.P.R.A, Tomo 1, ed. 2008, pág. 189.
La Enmienda Catorce de dicha Constitución, por su parte, dispone: “[N]ingún estado privará a persona alguna de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley, ni negará a nadie, dentro de su jurisdicción, la igual protección de las leyes”. Emda. XIV, Const. EE. UU., L.P.R.A., Tomo 1, ed. 2008, pág. 206.

 “The Fourteenth Amendment’s procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests —property interests— may take many forms”. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972).

 El Art. XIV(J) del Reglamento Núm. 6391, pág. 52, dispone lo siguiente:
“El Complemento al Contrato de Arrendamiento de Vivienda Pública formará parte del Contrato de Arrendamiento. El mismo se llenará en original y copia cuando se efectúen reexámenes regulares, especiales y traslados de familias a otra vivienda dentro del mismo residencial o a otro proyecto de la Administración de Vivienda Pública que no conlleve cambios de jefe de familia. En tales situaciones, el Contrato original quedará en efecto excepto aquellas cláusulas que sean enmendadas por el Complemento al Contrato de Arrendamiento”.

 El sexto señalamiento de error, referente a la temeridad, lo resolvemos más adelante.

 A esos efectos, el Art. 5 de la Ley Núm. 140 dispone: “Una orden resolviendo una controversia y fijando un estado provisional de derecho, según este capítulo, será inapelable, pero no constituirá cosa juzgada respecto a ninguno de los puntos adju-dicados en la misma ni impedirá ningún otro trámite judicial reclamando daños y perjuicios u otro derecho”. 32 L.P.R.A. sec. 2875.

 Durante la vista en el caso de desahucio desfiló evidencia relacionada a la alegada nulidad del Contrato de Arrendamiento del 2007; sobre las imputaciones de violación al debido proceso de ley planteadas por el peticionario, así como sus múl-tiples reclamos para sustentar su derecho a ocupar la propiedad. El tribunal de instancia tuvo la oportunidad de sopesarlas todas y, a base de la prueba que tuvo ante sí, formuló su determinación. Concluyó que ninguno de los posibles fundamen-tos utilizados por el señor Molina como base para reclamar un derecho a permanecer en el Apartamento se encontraba asentado en derecho.

 En lo que respecta a la solicitud de vivienda por derecho propio, consta en autos que no fue sino hasta el 12 de febrero de 2008, ya recaída la Sentencia de desahucio, que el peticionario formalizó el proceso correspondiente ante la A.V.P.

 El Reglamento 6416 establece las disposiciones de la Ley 171-2001 (17 L.P.R.A. sec. 1015 et seq.).

 No aparece información en el expediente que refleje conducta delictiva ulterior que le haga inmeritorio de vivienda pública. Tampoco obran en autos quejas de su comportamiento ya sea por sus vecinos o la administración. De hecho, según obra en la Resolución Fijando un Estado Provisional de Derecho, la Administradora del Residencial testificó durante dicho proceso que “el comportamiento del señor Molina era uno excelente”.

 Precisamente, el Reglamento Núm. 6391 le concede Preferencia I a solici-tantes que residan solos y que tengan alguna incapacidad. Art. V(C)(9), pág. 19.

 Conforme con lo anterior, se deja sin efecto nuestra Resolución del 12 de mayo de 2010 que declaró “ha lugar” la Moción de Auxilio de Jurisdicción presentada por la parte peticionaria.